Law Offices
**HINSHAW & CULBERTSON LLP**
3200 N. Central Avenue, Suite 800
Phoenix, AZ 85012
602-631-4400
602-631-4404
vorze@hinshawlaw.com
Victoria L. Orze (011413)
Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Bryan Nichols, | ) | No. CV 08-1491-PHX-FJM |
|---|---|---|
| Plaintiff, | ) | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | ) | |
| | ) | Oral Argument Requested |
| GC Services, LP, | ) | |
| Defendant. | ) | |

Defendant GC Services LP, pursuant to FR.Civ.P. 56, moves for summary judgment on Plaintiff's claims that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. This motion is supported by the record in this matter, Defendants' separate statement of facts filed herewith, and the following Memorandum of Points and Authorities.

**I.     MATERIAL FACTS**

    **A.     Background and Claims:**

This FDCPA action involves collection activity undertaken by defendant GC Services, LP ("GC") against Plaintiff Bryon Nichols, on account of a student loan taken out by Mr. Nichols from the Department of Education many years ago. For the purposes of this motion, GC admits that Plaintiff is a "consumer" as that term is defined by the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §1692a(3)m and that GC is a debt collector. Mr. Nichols denies that he ever took out a student loan, yet admits that he

might have done so but does not remember; however, the amount and validity of his student loan debt is not material to the motion or his FDCPA claim in general.

GC regularly attempts to collect on defaulted student loans on behalf of the Department of Education. Its services consist of attempting to negotiate a payment plan or pay-off plan with the debtor. GC does not sue student loan debtors or pursue garnishment against defaulted student loan debtors. If its efforts to negotiate a payoff or obtain a payment plan with debtors fails, GC reports as much to the Department of Education and recommends that the Department pursue its collection remedies against the defaulted debtors.

**B.     Defendant's Collection Activities:**

In this case, the Department of Education assigned the Bryon Nichols student loan account to GC on January 21, 2008. Defendant's Statement of Facts ("DSOF") ¶3. GC began its collection activity on January 24, 2008, by sending him a "30A" letter. DSOF ¶5. The letter was mailed to Mr. Nichols at 1041 West Harvest Street, Mesa, Arizona – an address at which Mr. Nichols regularly receives mail, and one he uses as his permanent mailing address. DSOF ¶¶5, 12. The 30A letter, and two letters later mailed to Mr. Nichols, contained all the language, information and notices required by 15 U.S.C. §1692g(a)(3), (4), and (5). DSOF ¶¶6, 7, 8, and Exhibit G-1 through G-3 to Grover Affidavit.

Also as a part of its collection activities, GC collectors telephoned Mr. Nichols at his place of employment, when they could not locate a home telephone number for him. Exhibit A. There is no evidence in the record that Mr. Nichols' employer – Granberry Supply Company – has a policy forbidding employees from making or receiving personal telephone calls, nor did Mr. Nichols ever inform GC that his employer had such a policy. Exhibit A. Mr. Nichols never told GC not to call him at his place of employment until

2

his attorney sent a cease and desist letter on July 1, 2008. Grover Affidavit ¶15. GC made no further calls to Mr. Nichol at his place of employment after receiving that letter. Grover Affidavit ¶17; see also Exhibit A.

In undertaking collections for the Department of Education, GC does not sue debtors or undertake to garnish debtors' wages. Its activities are limited to attempting to collect payments from debtors or negotiate payment plans with debtors. If GC's activities are not successful, GC makes recommendations to the Department of Education as to how it might pursue other collection avenues. The correspondence sent to Mr. Nichols by GC, on behalf of the Department of Education, clearly informed Mr. Nichols of possible consequences to him if his account should remain in default, and the information GC imparted was true. See Exhibits G-1 through G-3.

## II. ARGUMENT

### A. GC's initial communications satisfied the notice requirements of U.S.C. § 1692g

Mr. Nichols claims that GC failed to provide him with the information and notices required by the FDCPA, § 1692g. In fact, the first collections activity taken by GC with respect to Mr. Nichols was to mail a letter to him (Form Letter 30A) that included all the information required by the Act. The letter was mailed to Mr. Nichols at his parent's address, which is one he admits receiving mail at. His mother testified in her deposition that Mr. Nichols (and his other grown siblings) all receive mail regularly at her home, and she keeps it for them to retrieve at their convenience.

On June 11, 2008, a collector from GC spoke with Mr. Nichols at his place of employment. See Exhibit A, Account Detail Listing. At that time, GC's records indicated 1041 West Harvest Street, Mesa, was Mr. Nichols' residence, but when the

3

collector tried to confirm that address for him, Mr. Nichols said he had not lived at that address in years, but wanted to keep it as his mailing address.

GC's Account Detail Listing demonstrates that in all, three letters were mailed to Mr. Nichols at his 1041 West Harvest Street, Mesa, Arizona address. Letter 30A was mailed on January 24, 2008; Letter 30W was placed in the mail to him on February 16, 2008. Letter 30B was sent on March 7, 2008. All three of those letters complied with § 1692g. None of those letters were ever returned to GC Services. GC has adequately demonstrated that it provided the required information to Mr. Nichols in its initial collections communications to him, and summary judgment should be entered in its favor on the Plaintiff's § 1692g claim.

**B.    Defendant complied with Mr. Nichols' "cease and desist" request immediately on receiving it.**

The FDCPA prohibits a debt collector from contacting a debtor after receiving a request from the debtor to cease all such contact. The first communication GC Services ever received from Mr. Nichols containing that message was when it received a cease and desist letter from Marshall Meyers, Mr. Nichols' attorney. That letter, dated July 1, 2008, was received by GC on July 8th. Immediately after receiving it, GC entered the substance of the letter into its Account Detail Listing and noted that there was to be no further contact with the debtor. In furtherance with its efforts to avoid even inadvertent contact with Mr. Nichols after receiving the letter, and consistent with its policy of complying with such requests, GC also immediately removed the contact information for Mr. Nichols and substitute the address and telephone number of his attorney, Mr. Meyers, into its record.

Mr. Nichols has not disclosed, let alone provided any evidence that GC contacted him after receiving his cease and desist letter.

23031538v1 891933 46121

### C. GC did not violate § 1692c(a)(c) when it contacted him through his place of employment

Plaintiff complains that GC violated the FDCPA when it telephoned him at his place of employment. The FDCPA does not contain a blanket prohibition against calls to the debtor's place of employment. Rather, it forbids calls to the debtor's place of employment "if the collector knows or has reason to know that the [debtor's employer] prohibits the [debtor] from receiving such communication." *See* 1692c(a)(3).

There is no evidence in the record that Mr. Nichols' employer, Granberry Supply, has or had a policy prohibiting its employees from personal use of the telephone. The employer did not have such a policy, and GC Services obviously had "no reason to know" that Granberry imposed such a restriction.

Furthermore, it was on June 27, 2008 that Mr. Nichols, for the first time ever, communicated to GC that he did not want calls at his place of employment any longer. See Account Detail Listing page 8, 6-27-08 (11:27 entry). GC immediately thereafter removed Mr. Nichols' employment contact number from his records and noted in his account that there were to be no more calls to his place of employment.

### D. There is no admissible evidence that GC violated the FDCPA by communicating with any third parties about his student loan obligation.

The Plaintiff claims that collectors from GC Services had unauthorized communications with all manner of third-parties about his defaulted student loan, but he has not disclosed or produced any credible evidence of such improper contact. The FDCPA, at § 1692c(b), does prohibit debt collectors from communicating with third-parties about a consumer's debt (except to obtain location information).

5

On December 3, 2008, GC asked Mr. Nichols in an interrogatory to identify all third-parties he contends GC improperly communicated with regarding his student loan: INTERROGATORY 2. State the date, time, mode of communication, substance of communication, and person(s) communicated with, for each instance in which you claim Defendant communicated with Plaintiff or Plaintiff's family members, in violation of the FDCPA.

Mr. Nichols responded on January 19, 2009, as follows:

"ANSWER: See Objection to Interrogatory #1." That objection reads:

[OBJECTION] Plaintiff is unable to answer this question thoroughly because Plaintiff does not possess detailed records of Defendant's activities. Plaintiff's allegations are based on direct experience of specific events. Plaintiff did not expect to need to document Defendant's activities in a detailed manner and does not regularly document his activities with other agencies in his daily life. Defendant is presume to have a detailed record of its debt collection activities that could provide an answer to this question. Plaintiff is in possession of Defendants' collection record, but code is used in the record and therefore the record must be deciphered before use in answering this interrogatory. Please see Plaintiff's Rule 26 Disclosure Statement, Defendant's Rule 26 Disclosure Statement, Plaintiff's Complaint, Defendant's Answer, Defendant's discovery responses, the deposition of Defendant, and any other disclosures by either party already made or yet to be made. Plaintiff will seasonably supplement all disclosures if new information is obtained.

See Exhibit B, Plaintiffs Answers and Supplemental Answers to Defendant's Interrogatories.

Mr. Nichols' initial answer to Interrogatory #2 went on to "refer" GC to his answer to Interrogatory #7, which identified Pam and Phil Mink and Glen Nichols, at 1041 West Harvest in Mesa, giving their telephone number as 480-962-5340, Jasmine Zummallen, telephone number 480-233-3772, and his son Jordan Nichols (age 10), with an unknown phone number.

By this Answer, Plaintiff admitted that he did not know when he filed his lawsuit, and did not know by the time he answered discovery, if GC made any unauthorized contact with third parties in violation of the Act. He could not identify any specifics about such communications, including what was said, by whom, or when such contacts

23031538v1 891933 46121

took place. Thereafter, Mr. Nichols' mother Pam Mink was deposed and testified that she received numerous repeated and daily calls from someone at "GC Financial."

After Defendant's 30(b)(6) representative was deposed in this case, GC conducted a search of its records to determine if and when telephone calls were placed by GC collectors to any of the telephone numbers Plaintiff identified for "third parties." The search included all outgoing calls from the three offices which handled Department of Education accounts (Knoxville, Columbus and Tucson), and asked to identify calls placed between January 1, 2008 and July 1, 2008, to any of the numbers identified by the Plaintiff for third-parties. Between that time period, <u>no calls were made</u> by GC to 480-962-5340 – Plaintiff's mother's telephone number. Two calls were placed to the telephone number identified as Mr. Nichols' son Jordan's phone – one with no answer and the other of a few seconds in duration. Mr. Nichols' testimony on GC's contact with Jordan was only that Jordan told him either "GC called" or "call the man from GC."

There simply is no evidence in the record from which a reasonable jury could find that GC had unauthorized contact, in violation of the FDCPA, with third-parties relating to Mr. Nichols' debt. Summary judgment should be entered against Plaintiff on this claim.

**E.    Defendant did not "threaten" to take any unlawful action and there is no evidence of record that GC falsely represented that it or the creditor would taken action when it had no intention to.**

Mr. Nichols claims that GC violated § 1692e(5) by threatening to take action against him that could not legally be taken. Again, there is no evidence that GC made any such threats, represented that it would take action it did not intend to take, or in any way communicated it would take action that it could not take. Focusing again on the Plaintiff's answer to interrogatories, which asked him to divulge any details of such unlawful communications, he was unable to identify any until he first reviewed the GC's

23031538v1 891933 46121

collection notes. When Mr. Nichols was deposed, he testified that he did not remember any specific details about discussions he had with GC collectors on the telephone. Yet, he still alleges that GC made improper threats in violation of the Act.

The only evidence of record regarding GC's communications to Mr. Nichols on this issue is GC's Account Detail Listing and the three letters (30A, 30W and 30B) that GC mailed to Mr. Nichols. Nothing in the Account Detail Listing indicates that GC informed Nichols that it would sue him, that it would garnish him, or that it would confiscate his tax refunds to satisfy his obligation. Nor do the letters of record communicate any improper threats. To the contrary, the letters explicitly inform Mr. Nichols of the potential consequences of his remaining in default – and not that GC would take any action. The information imparted to Plaintiff regarding the potential consequences was true: the Department of Education is legally authorized to levy an administrative wage garnishment against student loan defaulters; it is legally authorized to confiscate tax refunds for debtors in default, and it is legally authorized to sue such debtors.

GC did inform Mr. Nichols that his refusal to make payments or try in any other way to resolve the debt could result in an administrative wage garnishment, and in fact, the Department of Education took steps to initiate such a proceeding against Mr. Nichols. The Account Detail Listing in fact indicates that Mr. Nichols was warned several times that the Department might take such an action against him, before the Department initiated the proceeding.

### F. Mr. Nichols has not disclosed or produced any evidence to establish the *prima facie* elements of the tort of invasion of privacy.

Finally, the Plaintiff's Amended Complaint alleges the state tort claim of invasion of privacy. In Arizona, this tort is limited to extraordinary and outrageous conduct. Mr.

23031538v1 891933 46121

Nichols has not provided any specific instances of conduct by the Defendant that qualify as actionable and tortious.

Arizona law follows the Restatement of Torts with respect to the elements necessary to establish the tort of invasion of privacy. *Hart v. Seven Resorts Inc.*, 190 Ariz. 272, 947 P.2d 846 (App. 1997). Invasion of privacy torts generally fall into two categories: "false light" invasion and "intrusion on seclusion." Mr. Nichols does not claim that Defendant published private information about him that placed him in a false light.

The tort of intrusion on privacy is different. The Restatement, as quoted in Hart, says one is subject to liability for intrusion into another's privacy if he "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another of his private affairs . . . if the intrusion would be highly offensive to a reasonable person." 190 Ariz. at 279, P.2d at 853. But liability is limited to those situations when the tortfeasor "has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Id*.

Mr. Nichols has not even attempted to demonstrate a *prima facie* case for his invasion of privacy claim and nothing in the record supports such a claim. Defendant should have summary judgment on this claim as well.

**G.   Conclusion**

Mr. Nichols' FDCPA claims are simply unfounded. The Plaintiff had no facts to support the suit when it was filed, and the expensive discovery he has conducted has failed to produce any admissible, credible evidence to support his claims. The defendant GC Services should be granted summary judgment on the record before this Court.

/ / /

/ / /

23031538v1 891933 46121

DATED this 13th day of July, 2009.

                                /s/ Victoria L. Orze
                                Victoria L. Orze
                                Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that on the 13thday of July, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Marshall Meyers, Esq.
mmeyers@attorneysforconsumers.com
Weisberg & Meyers, LLC
5025 North Central, Suite 602
Phoenix, Arizona 85012
Attorneys for Plaintiffs

By   /s/ Victoria Orze

23031538v1  891933  46121