Law Offices
**HINSHAW & CULBERTSON LLP**
3200 N. Central Avenue
Suite 800
Phoenix, AZ 85012
602-631-4400
602-631-4404
vorze@hinshawlaw.com

Victoria L. Orze (011413)
Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Bryan Nichols,<br><br>  Plaintiff,<br><br>vs.<br><br>GC Services, LP,<br><br>  Defendant. | No. CV 08-1491-PHX-FJM<br><br>**RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Defendant GC Services, LP ("GC"), through undersigned counsel, hereby responds to Bryan Nichols' ("Plaintiff") motion for summary judgment. The Plaintiff's motion should be denied because its allegations and accompanying statement of facts are inconsistent with the evidence of record, and in fact, the motion demonstrates that Plaintiff cannot support his claims with competent evidence such that summary judgment should be granted in Defendant's favor.

This Response is supported by Defendant's separate Objections to Plaintiff's Statement of Facts (filed herewith), the Defendant's Statement of Facts in support of its own summary judgment motion, Defendant's own Motion for Summary Judgment, and the following Memorandum of Points and Authorities.

**I.   INTRODUCTION**

The Plaintiff's motion seeks summary judgment on five alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA"), in connection

with collection activity undertaken by GC against the Plaintiff to recover on a student loan taken out by Plaintiff from the Department of Education.[1]  For the purposes of this motion, GC admits that the FDCPA applies to the present dispute, in that the Plaintiff is a "consumer" as defined by the FDCPA, GC is a "debt collector" as defined by the FDCPA, and the Plaintiff's obligation is a "debt" as defined by the FDCPA.

It should be clear from his motion that the Plaintiff has not and cannot support his FDCPA case with competent, admissible evidence. Moreover, the Plaintiff cannot controvert the evidence of record presented by Defendant GC, which demonstrates compliance with the FDCPA.  The Plaintiff's motion should be denied and Defendant's cross-motion granted.

## II.   LEGAL ARGUMENT

### A.   There is no evidence in the record that Defendant threatened to take unlawful action or that GC falsely represented that it or the creditor would take action when it had no intention to.

The Plaintiff claims that GC violated § 1692e(5) by threatening to take action against him that could not legally be taken.  There is no evidence of record that GC made any such threats, that it represented it would take action it did not intend to take, or that GC communicated to Plaintiff it would take action that it could not take.

Mr. Nichols' did not testify in his deposition and did not offer any affidavit testimony where he recalled any improper threats or communications made by the Defendant.  When posed interrogatories asking him to divulge any details of such unlawful communications, the Plaintiff admitted that he was unable to identify any such communications until he first reviewed GC's collection notes. *See* Exhibit B to Defendant's Motion for Summary Judgment at page 6, lines 1 through 13, and Exhibit B

---

[1] With respect to the loan itself, Plaintiff alternates between disputing he ever took it out and claiming he does not remember ever having done so.

2

thereto, which is Plaintiff's Answers and Supplemental Answers to Defendant's Interrogatories.

The Plaintiff's deposition testimony confirmed that he could not remember any details about discussions he had with GC collectors on the telephone. For example, Mr. Nichols was asked what he remembered about his first discussion with GC, and he answered "As I recall, there was a call; I asked what it was in reference to; they stated a figure and, "What is you" - - "How do you intend to pay?  Can you write a check?" Something of that nature." Nichols Deposition at 18:7-13.

Nonetheless, in support of his motion on this claim, Plaintiff points to two entries in Defendant's Account Detail Listing in which Plaintiff was given standard-form information regarding wage garnishment, treasury offset, and litigation as possible consequences of failure to repay debt obligations. Nothing in the notes themselves establish that GC made improper threats or representations. *See* Defendant's Response to PSOF at ¶47.

Rather than evidencing improper communications, the collection notes and Mr. Grover's testimony demonstrate that GC properly and accurately advised Mr. Nichols of the real and lawful potential consequences of his failure to resolve the account. *See* Defendant's Response to Plaintiff's Statement of Facts at ¶¶33, 34, and 41. Paul Grover testified (correctly) that the FDCPA prohibits debt collectors from representing that they are going to take action that they cannot or do not plan to take.   He explained that GC informed Mr. Nichols correctly what the Department of Eduction could lawfully do, and might in fact do, if the account was not resolved – and that the Department of Education, not GC, would make that determination in its own discretion.  Defendant's Response to PSOF at ¶35 and ¶41.

Nor do the letters GC sent to Plaintiff communicate any improper threats.  To the contrary, Letters 30A, 30W, and 30B explicitly inform Mr. Nichols of the potential

23031851v1 891933 46121

consequences of his remaining in default – and not that GC would take any action. *See* Grover Affidavit filed with Defendant's MSJ, Exhibit G-1, G-2, and G-3. The information imparted to Plaintiff in the letters regarding the potential consequences was true: the Department of Education is legally authorized to levy an administrative wage garnishment against student loan defaulters, it is legally authorized to confiscate tax refunds for debtors in default, and it is legally authorized to sue such debtors.

The Plaintiff has not and cannot controvert what the notes say. He has not presented any evidence to establish improper communications in violation of § 1692e(5). Mr. Nichols' motion on this claim should be denied, and the Defendant's should be granted.

**B.    Plaintiff has not established that he advised the Defendant to cease and desist communicating with him at work at any time before June 27, 2008, and he has not established that GC contacted him at work after he told it not to.**

The Plaintiff alleges that GC violated § 1692c(a) by calling his place of employment after knowing or having reason to know that the employer prohibits its employees from receiving such communication. There is no evidence in the record that Mr. Nichols' employer, Granberry Supply, has or had a policy prohibiting its employees from personal use of the telephone. Plaintiff's employer did not have such a policy, so GC Services obviously had "no reason to know" that the employer imposed such a restriction.

Although the Account Detail Listing provides specific details of discussions GC's collectors had with Mr. Nichols, the Listing shows that it was only on June 27, 2008 that Mr. Nichols, for the first time, told GC he did not want calls at his place of employment any longer. (*See* Account Detail Listing page 8, 6-27-08 (11:27 entry)). The collection notes establish (and Plaintiff has not controverted) that GC immediately thereafter removed Mr. Nichols' employment contact number from his records and noted in his

account that there were to be no more calls to his place of employment. There is no evidence in the Account Detail Listing, or anywhere else in the record, that GC contacted Plaintiff at work after June 27, 2008. In fact, the Account Detail Listing shows that no calls were placed to Plaintiff after June 27, 2008.

Moreover, the Account Detail Listing indicates that it was only on July 8, 2008, that Defendant received written correspondence on behalf of Plaintiff – that being his lawyer's July 1, 2008 letter. The letter claims only that GC communicated with Mr. Nichols after Mr. Nichols told him GC's calls were "inconvenient." (See Account Detail Listing page 9, 7-08-08 (9:06 entry)). The statute prohibits calls to the place of employment with knowledge that they are prohibited by the employer, not merely when such calls might be "inconvenient."

The evidence of record on this alleged violation does not favor Plaintiff's motion. Mr. Nichols has not presented any evidence that establishes he told the Defendant, at any time before June 27, 2008, not to contact him at work. The collection notes show that GC did not contact him at work at any time after June 27, 2008, and that GC got a cease and desist letter from Plaintiff only on July 8, 2008. These facts are not disputed. Summary judgment should be entered in Defendant's favor on this claim.

### C. Plaintiff has not established that GC had improper communications with any third persons in violation of § 1692c(b).

The Plaintiff claims that collectors from GC Services had unauthorized communications with all manner of third-parties about his defaulted student loan. The FDCPA, at § 1692c(b), does prohibit debt collectors from communicating with third-parties about a consumer's debt, except to obtain location information, but the Plaintiff has not disclosed or produced any credible evidence of such improper contact.

On December 3, 2008, GC asked Mr. Nichols in an interrogatory to identify all third-parties he contends GC improperly communicated with regarding his student loan:

5

INTERROGATORY 2. State the date, time, mode of communication, substance of communication, and person(s) communicated with, for each instance in which you claim Defendant communicated with Plaintiff or Plaintiff's family members, in violation of the FDCPA.

Mr. Nichols responded on January 19, 2009, as follows:

"ANSWER: See Objection to Interrogatory #1." That objection reads:

[OBJECTION] Plaintiff is unable to answer this question thoroughly because Plaintiff does not possess detailed records of Defendant's activities. Plaintiff's allegations are based on direct experience of specific events. Plaintiff did not expect to need to document Defendant's activities in a detailed manner and does not regularly document his activities with other agencies in his daily life. Defendant is presume to have a detailed record of its debt collection activities that could provide an answer to this question. Plaintiff is in possession of Defendants' collection record, but code is used in the record and therefore the record must be deciphered before use in answering this interrogatory. Please see Plaintiff's Rule 26 Disclosure Statement, Defendant's Rule 26 Disclosure Statement, Plaintiff's Complaint, Defendant's Answer, Defendant's discovery responses, the deposition of Defendant, and any other disclosures by either party already made or yet to be made. Plaintiff will seasonably supplement all disclosures if new information is obtained.

*See* Defendant's Exhibit B to Statement of Facts in Support of its MSJ.

Mr. Nichols' initial answer to Interrogatory #2 went on to refer GC to his answer to Interrogatory #7, which identified Pam and Phil Mink and Glen Nichols, at 1041 West Harvest in Mesa, giving their telephone number as 480-962-5340, Jasmine Zummallen, telephone number 480-233-3772, and Plaintiff's son Jordan Nichols (age 10), with an unknown phone number.

By this answer, Plaintiff admitted that he did not know when he filed his lawsuit, and did not know by the time he answered discovery, if GC made any unauthorized contact with third parties in violation of the Act. He could not identify any specifics about such communications, including what was said, by whom, or when such contacts took place.

Thereafter, Defendant deposed Pam Mink, Plaintiff's mother. She testified that she received numerous, repeated and daily calls from someone at "GC Financial." She testified the caller(s) were rude and aggressive, referred to her as a "low life" and told her

23031851v1 891933 46121

she should make her son pay his debt.    Her testimony is not just not credible, it is incredible. It also contradicts the Plaintiff's own testimony.   For example, Plaintiff testified he never received any mail from GC, not even at his mother's residence; his mother testified he received numerous pieces of mail from the Defendant at her house.

After Defendant's 30(b)(6) representative was deposed in this case, GC conducted a search of its records to determine if and when telephone calls were placed by GC collectors to any of the telephone numbers Plaintiff identified for "third parties."  The search included all outgoing calls from the three offices which handled Department of Education accounts (Knoxville, Columbus and Tucson), and asked to identify calls placed between January 1, 2008 and July 1, 2008, to any of the numbers identified by the Plaintiff for third-parties.  Between that time period, <u>no calls were made</u> by GC to 480-962-5340 – Plaintiff's mother's telephone number.  Two calls were placed to the telephone number identified as Mr. Nichols' son Jordan's phone – one with no answer and the other of a few seconds in duration.  Mr. Nichols' testimony on GC's contact with Jordan was only that Jordan told him either "GC called" or "call the man from GC." *See* Paul Grover Affidavit attached to Defendant's Statement of Facts in support of Defendant's MSJ at ¶¶12 through 14 and Defendant's Statement of Facts at ¶¶29, 30. Mr. Nichols' testimony on this alleged contact is inadmissible hearsay, but even if a GC collector did telephone his son's cell phone and did leave a message for Plaintiff to call "[name] at GC," that does not impart improper information about the debt.

There simply is no evidence in the record from which a reasonable jury could find that GC had unauthorized contact, in violation of the FDCPA, with third-parties relating to Mr. Nichols' debt.  The Plaintiff's motion for summary judgment on this count should be  denied and Defendant's motion for summary judgment granted.

**D.      Plaintiff has not established that GC violated § 1692c(c) by continuing to communicate with Plaintiff in an effort to collect the subject debt following explicit notice from Plaintiff to cease and desist such communication.**

As argued above and in Defendant's own motion and statement of facts, GC never received any notice from Plaintiff (or anyone on his behalf) to cease and desist collection communications with him until Mr. Meyers' July 1, 2008 letter arrived at Defendant's office on July 8, 2008.  GC's 30b6 representative testified that GC never received any cease and desist communication from Mr. Nichols prior to that letter, and Plaintiff acknowledged in his deposition testimony that he has no evidence to prove otherwise. Mr. Nichols' sole argument on this issue is his implication that the Defendant's Account Detail Listing is, on this point, unreliable or incomplete.  His argument is not supported by any evidence of record; at best it is hopeful speculation.

The totality of the evidence here amply demonstrates that the Defendant's Account Detail Listing contains a thorough record of all Defendant's collection activity with respect to Mr. Nichols' account.  GC documented when, what, and where it mailed correspondence to Mr. Nichols; its collectors noted the details of telephone conversations it had with him, including what numbers it called to reach him and when.  The Defendant recorded when it received correspondence from the Plaintiff and what that correspondence said, and what measures it took as precautions against contacted him in violation of his explicit direction. When the collectors spoke with someone other than Mr. Nichols, those contacts were noted in the Account Detail Listing as well, including the number the collector called.

The detailed collection notes show 1) Mr. Nichols told Defendant, for the first time on June 27, 2008, that it should not contact him at his workplace; 2) GC did not contact Plaintiff at his place of employment after June 27, 2008; 3) GC received correspondence from Plaintiff's lawyer for the first time on July 8, 2008, instructing GC

8

to cease collection communications with Mr. Nichols; and 4) GC complied with that cease and desist letter. Mr. Nichols has not and cannot controvert these facts with any competent evidence.

### E. The evidence of record demonstrates that GC in fact timely provided Plaintiff with the validation notices required by § 1692g.

Mr. Nichols claims that GC failed to provide him with the information and notices required by the FDCPA, § 1692g. In fact, the first collections activity taken by GC with respect to Mr. Nichols was to mail a letter to him (Form Letter 30A) that included all the information required by the Act. *See* Grover Affidavit and its Exhibits G-1 through G-3. The Defendant's compliance with this FDCPA requirement is established by the Account Detail Listing and Mr. Grover's testimony, which is consistent with the collection record. The Plaintiff's claim that he "did not get" Letter 30A or any of the Defendant's subsequent mailings is belied by his own mother's testimony. More importantly, Defendant does not have to prove that the Plaintiff <u>received</u> those letters, where it has established that it sent them, and when, where, and what those letters said.

In short, Mr. Nichols cannot dispute that GC mailed all three letters to him at 1041 West Harvest Street, Mesa, Arizona and cannot dispute that the letters comply with the Act. GC has adequately demonstrated that it provided the required information to Mr. Nichols in its initial collections communication to him and again thereafter. Plaintiff's motion on this count should be denied, and the Defendant's granted.

## III. CONCLUSION.

Mr. Nichols has yet to produce evidence sufficient to support the allegations in his Complaint and Motion for Summary Judgment. The Plaintiff had no facts to support the suit when it was filed, and the expensive discovery he has conducted has failed to produce any admissible, credible evidence to support his claims. The Plaintiff's motion

23031851v1 891933 46121

for summary judgement should accordingly be denied, and the Defendant's cross-motion should be granted.

DATED this 10th day of August, 2009.

HINSHAW & CULBERTSON LLP

/s/ Victoria L. Orze
Victoria L. Orze
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I certify that on the 10th day of August, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Marshall Meyers, Esq.
mmeyers@attorneysforconsumers.com
Weisberg & Meyers, LLC
5025 North Central, Suite 602
Phoenix, Arizona  85012
Attorneys for Plaintiffs

By   /s/ Anne Lockwood

23031851v1 891933 46121