**Marshall Meyers (020584)**
**WEISBERG & MEYERS, LLC**
**5025 North Central Ave. #602**
**Phoenix, AZ 85012**
**602 445 9819**
**866 565 1327 facsimile**
**mmeyers@AttorneysForConsumers.com**
**Attorney for Plaintiff**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **BRYON NICHOLS,**<br><br>Plaintiff,<br><br>   vs.<br><br>**GC SERVICES, LP,**<br><br>Defendant. | Case No. CV 08-1491-PHX-FJM<br><br>PLAINTIFF'S OBJECTION AND OPPOSITION TO DEFENDANT'S STATEMENT OF FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS ADDITIONAL FACTS |

Plaintiff BRYON NICHOLS ("Plaintiff"), hereby submits his Objection And Opposition To Defendant's Statement Of Facts In Support Of The Motion For Summary Judgment filed by Defendant, GC SERVICES LP., ("Defendant"), and Plaintiff's Additional Facts.  In support thereof, Plaintiff states as follows:

**DEFENDANT'S STATEMENT OF FACTS:**

1. Plaintiff does not dispute the statement of fact set forth in the according paragraph.

2. Plaintiff does not dispute the statement of fact set forth in the according paragraph.

1

3. On January 21, 2008 Defendant began actively collecting on an account designated to Plaintiff. (See Exhibit "A" to Plaintiff's Statement of Facts at p56, lines 1-12). Defendant claims that it did not initiate any collection efforts or perform any investigation related to Plaintiff's account prior to January 21, 2008. (See Exhibit "A" to Plaintiff's Statement of Facts at p56, lines 7-14). Defendant has not; however, submitted evidence regarding the date that "Defendant was engaged by the Department of Education to collect and outstanding student loan, in default status, that Plaintiff allegedly applied for in 1989."

4. Plaintiff does not dispute the statement of fact set forth in the according paragraph.

5. Defendant first contacted Plaintiff in effort to collect the subject debt via telephone, at his place of employment. (See Exhibit "C" to Plaintiff's Statement of Facts at p16, lines 20-25; p17, lines 1-5). Defendant contacted Plaintiff at his place of employment on numerous occasions thereafter. (See Exhibit "B" to Plaintiff's Statement of Facts at 2-8).

6. Plaintiff does not dispute the statement of fact set forth in the according paragraph.

7. Plaintiff states that he did not ever receive any written correspondence from Defendant:

> Q. Is it your testimony, Mr. Nichols, that you never received any mail from GC Services, my client?
>
> A. Yes.

2

(See Exhibit "C" to Plaintiff's Statement of Facts at p15, lines 10-12).

Further, Defendant does not keep copies of correspondence that it mails to alleged debtors. (See Exhibit "A" to Plaintiff's Statement of Facts at p78, lines 7-11). Defendant maintains only exemplars of the form correspondence that it sends, as a matter of course, to alleged debtors in effort to collect alleged outstanding obligations due third parties. (See Exhibit "A" to Plaintiff's Statement of Facts at p78, lines 1-6).

8. Plaintiff does not dispute the statement of fact set forth in the according paragraph.

9. Plaintiff does not dispute the statement of fact set forth in the according paragraph.

10. Defendant, as a matter of course, utilizes an automatic letter generating process when mailing correspondence to alleged debtors. Defendant initially requests, particular to an account on which it seeks to collect, that a letter is mailed to an alleged debtor. Upon receipt of an automatic letter request, a letter is generated by Defendant's Houston general office and mailed therefrom. (See Exhibit "A" to Plaintiff's Statement of Facts at p69, lines 13-15). Defendant's Houston general office utilizes the address of record at the time a request is made in generating and mailing requested correspondence. (See Exhibit "A" to Plaintiff's Statement of Facts at p78, lines 7-11). All letters, despite the location of the collector and debtor, are mailed from Defendant's Houston general office.

11. Mr. Grover purports to have personal knowledge that the subject letters were in fact mailed to particular addresses, notwithstanding his previous explanation

that the subject correspondence was "generated automatically" by a computer, "printed automatically", "retrieved in batches form the printer and taken to our mail processing room," where "[p]ostage is automatically affixed by machine," and placed in the mail. (See Affidavit of Paul Grover at ¶11). Mr. Grover's averments specific to mailings to Plaintiff are nothing more than assumptions. For reason that a person has "personal knowledge" of "a fact which can be perceived by the senses" only if he "had an opportunity to observe, and [has] actually observed the fact," Mr. Grover's statements, made without personal, knowledge, are inadmissible and should be stricken.

12. Plaintiff does not dispute the statement of fact set forth in the according paragraph.

13. The only basis for the according statements included in Mr. Grover's affidavit is his general understanding of how GC typically mails letters. Mr. Grover has provided absolutely no evidence of any personal knowledge regarding letter purportedly mailed by Defendant to Plaintiff. In fact, Mr. Grover fails to assert through his affidavit that he has ever even witnessed the general process utilized by Defendant to mail correspondence, let alone that particular to letters allegedly mailed to Plaintiff. Mr. Grover has provided no support, or personal knowledge, on which the averments included in his affidavit are based.

14. See paragraphs 10, 11 and 13 included herein.

15. Plaintiff does not dispute the statement of fact set forth in the according paragraph.

16. See paragraphs 10, 11 and 13 included herein.

17. Plaintiff does not dispute the statement of fact set forth in the according paragraph.

18. See paragraphs 10, 11 and 13 included herein.

19. See paragraphs 10, 11 and 13 included herein.

20. Plaintiff does not dispute the statement of fact set forth in the according paragraph.

21. In addition to Plaintiff's Notice Letter referenced by Defendant in the according paragraph, Plaintiff mailed to Defendant a letter requesting that Defendant cease and desist its collection efforts. Plaintiff's letter reads in part:

> In am writing to request that you stop contacting me regarding account number S545373594 with U.S. DEPARTMENT OF EDUCATION as required by the Fair Debt Collection Practices Act 15 U.S.C. section 1692c(c).
>
> GC Services and its agents have grossly misrepresented themselves and by mean of subterfuge have solicited personal information from co-workers and family members in addition to the harassing and disruptive phone calls to my place of business your company and its agents have made threatening and harassing phone calls to my family. The Fair Debt Collection Practices Act requires that you stop phoning me at home and at work once I request that you do so. Please cease. If you continue to phone me, then I will file a complaint with the FTC and the attorney general.

(See Exhibit "D" to Plaintiff's Statement of Facts).

22. Defendant maintains but two sources of information specific to each account for which it is employed to initiate collection proceedings: an account detail listing, and a "skeleton" of the account detail listing kept in Defendant's main database. (See Exhibit "A" to Plaintiff's Statement of Facts at p27, lines 4-9). Defendant does not

preserve collection documentation other than what is kept in Defendant's account detail listing. (See Exhibit "A" at p207, lines 8-10). Defendant does not keep audio recordings of telephone calls made by its collectors to debtors specific to accounts maintained for the department of education. (See Exhibit "A" at p34, lines 10-13).

Defendant concedes that the account detail listing may not be a complete accounting of all collection activity specific to an account, but rather, merely a notation of collection activity that Defendant maintains a physical record of:

> Q. In particular, the phone calls, is it possible that a collector could make a telephone call that would not show up in the call detail listing?
>
> A. They could.
>
> Q. That's a yes?
>
> A. Yes.

(See Exhibit "A" to Plaintiff's Statement of Facts at p33, lines 19-24).

Defendant confirms that the collection activity documented in the account detail listing does not necessarily reflect pertinent details particular to collection activity actually taken:

> Q. Why was the employer talked to on the 11th if Bryon had been spoken to on the 8th?
>
> A. I don't know.
>
> Q. And there are no notes here to say what that conversation?
>
> A. Right. Other than the conversation. It doesn't go into detail.

>            \*      \*      \*
>
>    Q.   From this note where it says that the collector spoke
>         to Bryon on the 8th, can you tell where he spoke to
>         Bryon?  At his house or at his job?
>
>    A.   No, I can't.

(See Exhibit "A" to Plaintiff's Statement of Facts at p96, lines 8-12; p97, lines 9-12).

Defendant further admits that collection activity included in the account detail listing is not always documented in accord with Defendant's internal policy.  (See Exhibit "A" to Plaintiff's Statement of Facts at p95, lines 9-14).

23.   See paragraph 22 included herein.

24.   Plaintiff does not dispute the statement of fact set forth in the according paragraph.

25.   See paragraph 21 included herein.  As well, subsequent to Defendant's initial telephone call to Plaintiff at his place of employment, Plaintiff requested of Defendant that it stop contacting him at his place of employment:

>    Q.   Before you retained Mr. Meyers, did you
>         communicate with GC and tell them to stop calling
>         you?
>
>    A.   Yes, ma'am.
>
>            \*      \*      \*
>
>    Q.   When was that?
>
>    A.   Pretty much every time they called.  Multiple
>         requests.  "You're getting me in trouble at my job."
>         An every time – just every time.  Because I really
>         was getting in a lot of trouble at my job about the
>         repeated calls.

> \* \* \*
>
> Q. How many times do you recall that you told them that, Mr. Nichols?
>
> A. It would have been dozens. The calls were multiple and daily for a period of time.
>
> \* \* \*
>
> A. Again, I believe most if not all of those calls, they were instructed, "Please don't – don't call here, I'm getting in trouble."

(See Exhibit "C" to Plaintiff's Statement of Facts at p21, lines 15-25; p22, lines 1-12; p52, lines 7-12).

26. Plaintiff does not dispute the statement of fact set forth in the according paragraph.

27. See paragraph 25 included herein.

28. See paragraphs 22 and 25 included herein.[1]

---

[1] On July 17, 2009 Defendant mailed to Plaintiff its Sixth Supplemental Disclosure Statement, which consisted of Defendant's Call Detail Report. Defendant's Call Detail Report is a thirty-five (35) page document comprised of listings of codes, abbreviations, numeric data, computer coding, language, and other material not comprehensible without the aid of an individual very well familiar with such documentation. (See Call Detail Listing, attached hereto as Exhibit "A"). Defendant's Call Detail Report falls squarely with the grouping of documents that Plaintiff requested from Defendant not only through his December 10, 2008 Requests for Production, but also through his April 13, 2008 Notices of Depositions, pursuant to which Mr. Grover appeared for examination. On August 6, 2008 Plaintiff requested of Defendant convenient dates to re-depose Mr. Grover with particular regard to Defendant's Call Detail Report. Plaintiff has also filed a motion with this Court seeking leave to re-depose Mr. Grover specific to the Call Detail Listing, as there exist within the Call Detail Listing abundant unexplained telephone calls placed by Defendant in connection with collection of the subject debt.

8

29.     Defendant placed telephone calls to Plaintiff, Plaintiff's mother, Plaintiff's girlfriend, Plaintiff's ten-year-old son, and Plaintiff's co-workers in attempt to collect the subject alleged debt. (See Exhibit "C" to Plaintiff's Statement of Facts at p36, lines 12-15; p41, lines 10-24; p46, lines 18-20; p55, limes 15-18). On repeated occasion Defendant contacted not only Plaintiff's home telephone number, but Plaintiff's mother's residence, Plaintiff's son's cellular telephone, and Plaintiff's place of employment.  Specific to calls placed to Plaintiff's mother's residence, Defendant communicated in a verbally abusive manner on more than one occasion.  On the first occasion that Defendant contacted Plaintiff's mother, the conversation "was short and sweet and to the point … they were looking for Bryon, could I please convey the message …. " (See Exhibit "E" to Plaintiff's Statement of Facts).

Subsequent, Defendant contacted Plaintiff's mother again, who noted: "The best I can do is give him a message, he no longer lives here." (See Exhibit "E" to Plaintiff's Statement of Facts at p31, lines 11-15).  The very next call Defendant placed to Plaintiff's mother's residence occurred "around supper time." (See Exhibit "E" to Plaintiff's Statement of Facts at p34, lines 24-25). "I told them no, that he wasn't there, like he wasn't the other times they called, and that I had given him the message and I asked them to please not call anymore. (See Exhibit "E" to Plaintiff's Statement of Facts at p35, lines 7-10). Shortly thereafter, following yet another telephone call placed by Defendant to Plaintiff's mother's residence, Plaintiff's mother noted: "Look, I've been really nice to you every other time you called here, and I know you are trying to get ahold of this young man. I've conveyed your message.  Please quit calling my

house and disrupting my supper or early mornings." (See Exhibit "E" to Plaintiff's Statement of Facts at p37, lines 9-13). Defendant, in response, noted:

> A. They said they would call me until Bryon called them, and if I didn't like it, that was really too bad. That if I wanted the calls to stop, that I'd better find my son and make him call them.
>
> \* \* \*
>
> A. The gist of it was: Oh, we see you are not a person of good character, therefore you don't care if your son is a low-life.
>
> \* \* \*
>
> A. They implied that we were people who didn't live up to our obligations.
>
> \* \* \*
>
> A. "You can make your son call me."

(See Exhibit "E" at to Plaintiff's Statement of Facts p38, lines 22-25; p41, lines 16-18, 25; p42, line 1; p46; lines 1-6).

What's more, Defendant contacted Plaintiff's ten-year-old son, in effort to solicit information regarding Plaintiff, in effort to collect the subject debt. (See Exhibit "C" to Plaintiff's Statement of Facts at 43, lines 9-25; p44, lines 1-25; p45, lines 1-25; p46, lines 1-20). In particular, Defendant placed a telephone call to Plaintiff's son's cellular phone. (See Exhibit "C" to Plaintiff's Statement of Facts at 44, lines 5-10). "It was a phone for him we got for his birthday." (See Exhibit "C" to Plaintiff's Statement of Facts at 44, lines 5-10). "He came to me with the phone and said, 'Dad, a man called for you and said you can call him.'" (See Exhibit "C" to Plaintiff's Statement of Facts

at 45, lines 14-15). Plaintiff's son in fact specifically identified that the phone call to his cellular telephone was placed by Defendant: "He's ten. He said, 'call the man from GC.' Or, 'the man from GC.'" (See Exhibit "C" to Plaintiff's Statement of Facts at 45, lines 21-23).

30. See paragraphs 22, 25, and 28 included herein.

31. See paragraph 29 included herein.

32. See paragraph 25 included herein.

33. See paragraph 22.

**PLAINTIFF'S ADDITIONAL FACTS PRECLUDING JUDGMENT IN FAVOR OF DEFENDANT:**

1. Plaintiff hereby incorporates its Statement of Facts in support of Plaintiff's Motion for Summary Judgment, filed on July 6, 2009, as if fully recited herein.

By: s/ Marshall Meyers
Marshall Meyers (020584)
WEISBERG & MEYERS, LLC
Attorney for Plaintiff

Filed electronically on this 12th of August, 2009, with:

United States District Court CM/ECF system

Notification sent electronically via the Court's ECF system on this 12th day of August, 2009, to:

Victoria L. Orze
Hinshaw & Culbertson, LLP
3200 N. Central Ave Suite 800
Phoenix AZ 85012

1 | s/ Marshall Meyers
2 | Marshall Meyers