**Marshall Meyers (020584)**
**WEISBERG & MEYERS, LLC**
**5025 North Central Ave. #602**
**Phoenix, AZ 85012**
**602 445 9819**
**866 565 1327 facsimile**
**mmeyers@AttorneysForConsumers.com**
**Attorney for Plaintiff**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| **BRYON NICHOLS,**<br>Plaintiff,<br><br>**vs.**<br><br>**GC SERVICES, LP,**<br>Defendant. | )<br>)<br>)<br>) | Case No. CV 08-1491-PHX-FJM<br><br>**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## I. CONSIDERATION OF THE FACTUAL RECORD REVEALS THE LACK OF ANY GENUINE ISSUE OF MATERIAL FACT SPECIFIC TO PLAINTIFF'S CLAIM FOR VIOLATION OF SECTION 1692e(5) OF THE FDCPA, THUS ENTITLING PLAINTIFF TO SUMMARY JUDGMENT IN ACCORD WITH APPLICABLE LAW.

### A. Defendant, In Announcing That "There Is No Evidence Of Record" That GC Made Any Threats To Take Action Against Plaintiff That Could Not Be Legally Taken," Fails To Draw Attention To The Testimony Of Its Own Designated Corporate Representative Explicitly Demonstrating Otherwise.

Defendant, in defense of Plaintiff's claim that it violated section 1692e(5) of the FDCPA, relies upon suggested implications arising from its contention that "Mr. Nichols did not testify in his deposition and did not offer any affidavit testimony where he recalled any improper threats or communications made by Defendant." (See Defendant's Response to Plaintiff's Motion for Summary Judgment ("Response") at 2). Defendant fails, however, throughout the entirety of its Response to reference the admissions of Paul Grover, Defendant's designated corporate representative, explicitly detailing the very

threats and communications that Defendant now insinuates a lack thereof. Indeed, while Defendant devotes paragraph after paragraph of its Response to the purported deficient nature of Plaintiff's answers to Defendant's counsel's examination questions, Defendant does not call attention to any detail of Mr. Grover's deposition testimony.

Noteworthy, with regard to Defendant's Account Detail Listing entry of February 14, 2008, which reads "WARNED OF AWG TOPS AND LIT BORR STILL REFD ALL ARRANGEMENTS / CALL ENDED," Mr. Grover explained: "**This means we gave him the AWGTOPS and the – the litigation warning in talk-off we had with him**." (See S. at ¶32). Mr. Grover continued: "He refused all arrangements. **We warned of the events of wage garnishment, the treasury offset program, and litigation**. The borrower still refused all informations [sic], and the call ended." (See S. at ¶31) (emphasis added). Additionally, particular to Defendant's Account Detail Listing entry of 11, 2008, which reads: "ASKED BORR IF PLANS ON DOIN NOTHIN ON IT CAUSE AS LONG IN DEF BORR FACIN POSS WG / POSS SEIZURE IF ANY FED TAX REFUNDS AS WELL AS LITIGATION," Mr. Grover acknowledged: "**We are advising him that it – this – this process can go to wage garnishment, treasury offset, litigation**." (See S. at ¶¶33-34) (emphasis added).[1]

---

[1] Significant, and discussed in detail through Plaintiff's Motion for Summary Judgment, the Federal Trade Commission Commentary, with reference to the language of section 1692e(5), states: "A debt collector may not state **or imply** that he **or any third party** may take any action unless such action is legal and there is a reasonable likelihood, at the time the statement is made, that such action will be taken." 53 Fed. Reg. 50106 (emphasis added).

**B. Defendant's Implication That Threats Made To Plaintiff Were Merely Informative Statements Regarding "Potential Consequences Of His Failure To Resolve The Account" Is Without Legal Or Factual Support.**

Defendant, in effort to defend itself from liability arising from section 1692e(5) of the FDCPA, states that "nothing in the notes themselves establish that GC made improper threats or representations." (See Response at 3). Defendant further announces that Defendant's collection notes simply "demonstrate that GC properly and accurately advised Mr. Nichols of the real and lawful potential consequences of his failure to resolve the account." (See Response at 3). Stated otherwise, Defendant insinuates that its threats were nothing more than statements intended to "provide a public service" informing Plaintiff that lawsuits sometimes occur. *See United States v. National Financial Services, Inc.*, 98 F. 3d 131 (4th Cir. 1996). Defendant's implication is not only misleading, but flies in the face of established circuit court precedent rejecting identical defense tactics.

**1. Although Defendant Suggests That Its Threats Were Merely Informative Statements Regarding The Department Of Education's Capacity To Act, Defendant Failed To Reference The Department Of Education When Making Such Threats.**

With regard to Defendant's suggestion that its threats were simply informative comments concerning the Department of Education's capacity to act, Defendant fails to emphasize that nowhere in Defendant's "advisory comments" did the Defendant even allude to the Department of Education. On one occasion Mr. Grover detailed: "**This means we gave him the AWGTOPS and the – the litigation warning in talk-off we had with him** … He refused all arrangements. **We warned of the events of wage garnishment, the treasury offset program, and litigation**. The borrower still refused

all informations [sic], **and the call ended**." (See S. at ¶¶31-32). Defendant did not temper its threats against the backdrop of action that the Department of Education may take, but rather threatened certain legal and other consequence without qualification. In fact, with particular regard to the actual language utilized by Defendant in making threats against Plaintiff, Defendant continuously employed terms such as "we" and "we're," rather than reference to the Department of Education. (See S. at ¶¶31-35, 40, ).

**2. Defendant's Threats Against Plaintiff Must Be Construed In Accord With The Clear Import Of All Communication Conveyed By Defendant.**

Defendant violation of section 1692e(5) of the FDCPA results from the reasonable belief that Defendant's "warnings" threatened legal or other action that Defendant did not intend to take at the time such threats were made. *See United States v. National Financial Services, Inc*., 98 F. 3d 131 (4th Cir. 1996). Defendant's threats are to be understood not from the perspective of a sophisticated debt collector, but rather from the standpoint of the "least sophisticated consumer." (Discussed in Plaintiff's Motion for Summary Judgment). The purpose of the least sophisticated consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. *Id*. at 136. Indeed, "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Federal Trade Commission v. Standard Education Society,* 302 U.S. 112 (1937).

**3. Circuit Courts Of Appeal Have Rejected The Very Argument That Defendant Now Submits To This Court.**

Of the utmost significance, the Fourth Circuit Court of appeals rejected the very argument that Defendant now presents in stating: "Rather than evidencing improper communications, the collection notes and Mr. Grover's testimony demonstrate that GC properly and accurately advised Mr. Nichols of the real and lawful potential consequences of his failure to resolve the account." (See Response at 3). In fact, the Fourth Circuit, in *United States v. National Financial Services, Inc.*, refused to accept the defendant's argument that it was not liable for violation of section 1692e(5) of the FDCPA simply because the subject communications "were merely factual statements," noting, "[w]hile the defendants are literally correct, we do not believe that any consumer could reasonably believe that NFS intended to provide a public service by informing him about the basic functions and fee requirements of attorneys." *See National Financial Services, Inc.*, 98 F. 3d at 137. The Fourth Circuit continued:

> To find otherwise would undermine the consumer protection goals of the statute and permit debt collectors to get away with accomplishing the threat under the flimsy disguise of "statements of fact." As we have said before in the context of § 1692g, "[t]here are numerous and ingenious ways of circumventing [the law] under a cover of technical compliance. [The defendants have] devised one such way, and we think that to uphold it would strip the statute of its meaning." *Miller v. Payco-General American Credits, Inc.*, 943 F.2d 482, 485 (4th Cir.1991). Here, we have an obvious intention to make debtors afraid that they would be sued, an effective tactic no doubt, but one which violates the law.

*Id*. at 138; *see also Brown v. Card Service Center*, 464 F. 3d 450 (3d Cir. 2006) (rejecting the defendant's argument that it neither stated nor implied that legal action is imminent,

only that it is possible, explaining that there is no legal distinction between statements noting what debt collectors *would* do if a given debtor failed to respond and what debt collectors *could* do.).

Defendant's threats do not impart to the least sophisticated consumer a metaphysical possibility, but in context, denote reasonable likelihood. The Fourth Circuit in *National Financial Service, Inc*., explained that courts are not "to adopt a hyper-literal approach [to the FDCPA] which ignores the ordinary connotations and implications of language as it is used in the real world." *National Financial Services, Inc*., 98 F. 3d at 138. Taken to its logical conclusion, if accepted by this Court, Defendant's suggestion that its threats against Plaintiff merely "properly and accurately advised Mr. Nichols of the real and lawful potential consequences of his failure to resolve the account," would justify any statement, whether true or false, misleading or deceptive, so long as the debt collector was clever enough to couch his remarks in less than absolute terms.

## II. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIMS FOR VIOLATION OF 1692c OF THE FDCPA WHERE DEFENDANT HAS FAILED TO PRESENT EVIDENCE ESTABLISHING THE EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT.

### A. Defendant Improperly Rests Upon Its Mere Denial Of Plaintiff's Pleadings And Claims Without Presenting Affidavit Testimony Or Specific Facts Demonstrating A Genuine Issue For Trial.

Similar to Defendant's approach in attempting to defend its conduct violative of section 1692e(5) of the FDCPA, in response to Plaintiff's claims for violation of section 1692c(b) of the FDCPA Defendant focuses solely upon what it deems deficiencies in Plaintiff's initial answers to Defendant's interrogatories and fails to submit any defense

or opposition to the sworn testimony of Plaintiff's mother.[2] In fact, Defendant's sole reference to Plaintiff's mother's sworn responses to Defendant's counsel's examination questions amounts to: "Her testimony is just not credible, it is incredible." (See Response at 6). **Defendant undeniably fails to present a single citation to the record, affidavit testimony from Defendant's representative with whom Plaintiff's mother spoke, or any other evidence that would call into question the integrity of Plaintiff's mother's statements**. "[C]aptious, immaterial and imaginary issues of fact may be found in any case, but if the motion for summary judgment is to serve any useful purpose, the court must unhesitatingly grant it when a careful consideration of the facts reveals no real genuine issue of fact involved." *Carlander v. Dubuque Fire & Marine Ins. Co.*, 87 F. Supp. 65 (D.C. Ark. 1949).

**B. Defendant Fails To Present Pertinent Evidence Creating A Material Issue Of Fact As To Essential Elements Of Plaintiff's Request For Summary Judgment Under Section 1692c(a).**

Defendant, again without support, citation, or reference to any evidence, abruptly asserts: "There is **no evidence** in the record that Mr. Nichol's employer, Granberry Supply, has or had a policy prohibiting its employees from personal use of the telephone." (See Response at 4) (emphasis added). Defendant later announces that "GC

---

[2] Plaintiff's mother testified that Defendant placed, among others, harassing telephone calls to which she responded: "Look, I've been really nice to you every other time you called here, and I know you are trying to get ahold of this young man. I've conveyed your message. Please quit calling my house and disrupting my supper or early mornings." (See S. at ¶60). Plaintiff's mother explained that Defendant replied: "They said they would call me until Bryon called them, and if I didn't like it, that was really too bad. That if I wanted the calls to stop, that I'd better find my son and make him call them … The gist of it was: Oh, we see you are not a person of good character, therefore you don't care if your son is a low-life … They implied that we were people who didn't live up to our obligations." (See S. at ¶61).

had 'no reason to know' that the employer imposed such a restriction." (See Response at 4). Defendant, however, refuses to draw attention to, or refute, Plaintiff's testimony detailing his repeated requests that Defendant cease communication with him at work. Plaintiff specifically explained that he asked Defendant to stop calling him at work "[p]retty much every time they called. Multiple requests. 'You're getting me in trouble at my job.' And every time – just every time. Because I really was getting in a lot of trouble at my job about the repeated calls." (See S. at ¶34). In fact, Mr. Nichols stated that he made such request "dozens" of times. (See S. at ¶34).

What's more, Defendant's only affirmative defense to Plaintiff's claim that Defendant improperly contacted him at his place of employment is based upon blind reliance on "collection notes." (See Response at 5). Significant, Mr. Grover conceded upon examination that Defendant's collection notes may not be a complete accounting of all collection activity specific to an account, and that collection activity documented in Defendant's collection notes does not necessarily reflect pertinent details particular to collection activity actually taken. (See S. at ¶¶12-14). Also important, Mr. Grover admitted that Defendant's collection notes are not always documented in accord with Defendant's internal policy. (See S. at ¶12-14).

**C. Defendant's Attempt To Induce Plaintiff's Ten (10) Year-Old Son To Provide Information Regarding Plaintiff's Whereabouts Constitutes Communication Violative Of The FDCPA.**

Defendant, through its motion for summary judgment as well as its response to Plaintiff's motion for summary judgment, admits that it placed telephone calls to Plaintiff's ten (10) year-old son in connection with its efforts to collect the subject debt.

(See Defendant's Motion for Summary Judgment at 7); (See Response at 7).[3] Significant, state courts have found that inducing a child to provide a debt collector with a consumer's contact information violates debt collection laws premised upon the FDCPA. *Foley Newsom Oil Co. v. Crawford*, 515 S.W. 2d 750 (Tex. Civ. App. 1974) (finding that contacting a consumer on many occasions including during sleeping periods, contacting a consumer's neighbors concerning a consumer's debt, inducing a child to provide a debt collector with a consumer's contact information, and contacting a consumer's employer causing a threat to employment, constitute unreasonable collection methods); *see also Household Credit Services, Inc. v.* Drisco, 989 S.W. 2d 72 (App. 8 Dist. 1998).

**III. CONCLUSION.**

For the aforementioned reasons, Plaintiff respectfully requests that this Court enter an order granting Summary Judgment in favor of Plaintiff, awarding statutory damages in the amount of $1,000.00, and granting Plaintiff leave to file his Petition for Attorneys' Fees and Costs pursuant to applicable fee shifting provisions included in the FDCPA.

By: s/ Marshall Meyers

Marshall Meyers (020584)
WEISBERG & MEYERS, LLC
Attorney for Plaintiff

Filed electronically on this 26th of August, 2009, with:

---

[3] Defendant additionally references a "call search" particular to outgoing calls. Indeed, the call search noted by Defendant was neither disclosed through discovery nor at the time of Plaintiff's examination of Mr. Grover. Accordingly, it is the subject of Plaintiff's motion for leave to re-depose Mr. Grover now pending before this Court.

United States District Court CM/ECF system

Notification sent electronically via the Court's ECF system on this 26th day of August, 2009, to:

Victoria L. Orze
Hinshaw & Culbertson, LLP
3200 N. Central Ave Suite 800
Phoenix AZ 85012

s/ Marshall Meyers
Marshall Meyers