Law Offices
**HINSHAW & CULBERTSON LLP**
3200 N. Central Avenue
Suite 800
Phoenix, AZ 85012
602-631-4400
602-631-4404
vorze@hinshawlaw.com

Victoria L. Orze (011413)
Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Bryan Nichols, | ) | No. CV 08-1491-PHX-FJM |
| Plaintiff, | ) ) | **DEFENDANT'S REPLY RE MOTION FOR SUMMARY JUDGMENT** |
| vs. | ) ) | Oral Argument Requested |
| GC Services, LP, | ) ) | |
| Defendant. | ) | |

Defendant GC Services LP, pursuant to FR.Civ.P. 56 and L.R. Civ. 56.1 hereby Replies to Plaintiff's Response to its Motion for Summary Judgment. In short, Mr. Nichols has not demonstrated evidence sufficient to make a prima facie showing of the Defendant's alleged FDCPA violations; summary judgment should be entered in favor of Defendant on all Plaintiff's claims. Defendant will reply to each of Plaintiff's claims in turn:

**15 U.S.C. § 1692(e)(5) – Improper Threats:** This section states that it is a violation of the Act for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. To establish illegal collection conduct, Mr. Nichols must be able to demonstrate that the collector threatened to take action it could not legally take, or that the collector or creditor had no intention of taking. *Newman v. Checkrite Cal., Inc.*, 912 F.Supp. 1354, 1379 (E.D.Cal.1995). Specifically, "A determination of defendants' liability under this claim turns on two questions: (1) whether

there was threatened legal action and, if so (2) whether such action could legally be taken or whether there was an intent to bring a court action in the absence of payment" *Id*. See also *Gostony v. Diem Corporation*, 320 F.Supp.2d 932 (D.Ariz. 2003).

Although his briefings are rife with the <u>conclusion</u> that the Defendant improperly "threatened" him, Mr. Nichols has not produced any evidence from which a reasonable jury could conclude that GC Services threatened any action at all.

The sum total of Plaintiff's evidence is 1) the collector's entry in Defendant's Account Detail Listing on February 14, 2008: "WARNED OF AWG TOPS AND LIT BORR STILL REFD ALL ARRANGEMENTS/CALL ENDED." 2) the June 11, 2008 entry that "AS LONG AS IN DEF BORR FACIG POSS WG/POSS SEIZURE IF ANY FED TAX REFUNDS AS WELL AS LITIGATION."[1] and 3) Paul Grover's testimony explaining the substance of these entries: "We warned of the events of wage garnishment, the treasure offset program, and litigation." and "we are advising him that it – this – this process can go to wage garnishment, treasury offset, litigation." *See,* Grover deposition, p. 157:18-23. At most, the evidence indicates that the Defendant warned Mr. Nichols of the potential consequences of his failure to resolve his outstanding student loan.

Most notably missing from the record is <u>any</u> testimony from Mr. Nichols that any of the Defendant's collectors uttered any words or phrases that would constitute a threat. Mr. Nichols has never said, "GC threatened me," "I felt threatened," or "GC said it would sue me." There is no evidence that GC's collectors said anything to Mr. Nichols that could be interpreted as an improper threat. In fact, there is no evidence of record as to what GC actually said or what Mr. Nichols heard.

---

[1] Mr. Nichols relies on the Account Detail Listing as his sole evidence of improper threats under 1692e(5), but relative to his other claims he argues that it is inherently unreliable.

23032105v1 891933 46121

1  None of the potential events warned of were or would have been improper. With
2  respect to defaulted student loans, the Department of Education is specifically authorized
3  to levy an administrative wage garnishment against a debtor in default. *See* Section
4  31001(o) of the Debt Collection Improvement Act of 1996 (DCIA), Pub. L. 104-134, 110
5  Stat. 1321-358 (Apr. 26, 1996), Codified at 31 U.S.C. 3720D.

6  The Department of Education is also legally permitted to attach a defaulted
7  debtor's federal income tax refunds. See 31 U.S.C. 3720A (b) and 31 CFR 285.2. And it
8  certainly can file a lawsuit against a defaulted debtor and obtain a judgment.

9  Even if the Court finds that the evidence of record would permit a reasonable jury
10 to determine a "threat" was made, there is no evidence that the creditor (in this case, the
11 Department of Education) intended not to take the actions warned of.  Nor is there any
12 evidence that the collector warned of potential events it knew the creditor did not intend
13 to take.  Mr. Grover testified that the Department of Education could decide to pursue
14 one or all three of the collection activities warned of; it was up the Department to make
15 that decision, not the Defendant.  There is therefore no evidence from which a reasonable
16 jury could find that the Defendant warned of consequences it knew the creditor did not
17 intend to take.

18 Besides lacking any evidentiary support, the Plaintiff's argument defies common
19 sense.  Even if there was competent evidence in the record that Defendant's collector said
20 something like, "I hereby warn you that your failure to resolve this account could result
21 in an administrative wage garnishment, litigation, or the diversion of your income tax
22 refunds, if any," (and there is no such evidence), a "warning" is not a "threat."

23 Going back to basics, "warning" is defined as "a pointing out of danger…. The
24 purpose of a warning is to apprise a party of the existence of danger of which he is not
25 aware to enable him to protect himself against it." BLACK'S LAW DICTIONARY, Abridged
26 Fifth Edition (1983). In contrast, "threat" is defined as "a communicated intent to inflict

physical or other harm to any person or property. A declaration of intention or determination to inflict punishment, loss, or pain on another, or to injure another by the commission of some unlawful act." *Id.*

The only evidence of record for a jury to hear on this issue is Paul Grover's testimony that the notation means GC warned the debtor of what might happen if he fails to resolve the account. The potential events warned of were all legally permissible and could in fact be taken by the Department of Education. There is no evidence in the record as to the Department's intent or lack thereof. While the FDCPA is a strict liability statute, it does not relieve a plaintiff of the burden of proof.

**15 U.S.C. § 1692g – Failure to Provide Certain Information in Initial Communications**: This section requires debt collectors to include certain information in its initial collection communications with debtors. The Defendant has established that, in accordance with its standard business practice, its Form Letter 30A was mailed to Mr. Nichols at his parent's address, which is one he admitted using as his permanent mailing address. The Letter (in the record at Defendant's SOF Exhibit G-1 clearly complies with the statutory requirements.

Mr. Nichols testified he never received Form Letter 30A; he contends that his 'initial communication' from Defendant was by telephone. Even if Mr. Nichols testimony is accepted as true, however, it is of no moment that he did not receive Letter 30A. The Defendant is not required to demonstrate Mr. Nichols actually received the letter and it is not necessary, to comply with the Act, that Mr. Nichols actually received the letter.

GC Services has established through uncontroverted testimony of its 30(b)(6) representative that Form Letter 30A was addressed to Mr. Nichols at his mailing address on W. Harvest in Mesa, Arizona, that it was placed in the U.S. Mail from Defendant's headquarters in Houston, and that it was not returned to the Defendant by the post office.

1  In both Arizona state courts and this Federal Court district, there is a strong presumption
2  that anything placed in the mail has been received. Circumstantial evidence regarding
3  "routine custom and practice can be sufficient to support the inference that something is
4  mailed." *United States v. Green*, 745 F.2d 1205, 1208 (9th Cir.1985). "Direct proof of
5  mailing is not required." *Id*.

6  Moreover, other courts have found that debt collectors complied with the
7  validation notice requirement of 1692g, where they included proper notice of debtor's
8  right to contest the debt in letter and properly posted letter which debtor received, <u>even
9  assuming that debtor did not receive contents of letter</u>. *Simmons v. Miller*, S.D.Ind.1997,
10  970 F.Supp. 661 (emphasis added).

11  In short, the Defendant here has affirmatively demonstrated, with uncontroverted
12  testimony, that its initial communication with Mr. Nichols was a Form Letter, sent to his
13  mailing address, that included the required statutory language.  Mr. Nichols has not come
14  forward with any material evidence to controvert Mr. Grover's testimony; his only retort
15  is that he did not get any such letter.   Even if he is to be believed, it does not matter
16  whether he received the letter or not.   The Act requires a collector to transmit the
17  information – not to demonstrate that it was received and appreciated.

18  With respect to his argument that Mr. Grover lacks personal knowledge from
19  which to testify to the initial communication because he did not personally witness the
20  mailing, that level of direct evidence is not required to establish that a mailing was
21  accomplished.   If it were, mailroom attendants everywhere, and not 30(b)(6)
22  representatives, would be deposed in each and every one of these cases.

23  **15 U.S.C. § 1692c(c) – Communications with Debtor after Debtor Directs
24  Collector to Cease and Desist**:    This section forbids a collector from communicating
25  with a debtor if the consumer notifies the debt collector in writing that he wishes the debt
26  collector to cease further communications with him. This subsection is very specific as to

5

what constitutes proper notice to the collector: "If such notice from the consumer is made by mail, notification shall be complete upon receipt."

Mr. Nichols testified he placed a letter in the mail to the Defendant (other than the July 1 letter from his attorney to Defendant), but admitted he cannot prove that GC Services received the letter because the certified return receipt green card was never returned to him. Mr. Grover testified that any such letter, if GC received it, would be noted and quoted in the Account Detail Listing. His testimony is verified by the recitation of Mr. Meyers' July 1, 2008 letter, received by GC on July 8.

Mr. Nichols has not produced any evidence from which a jury could find that the Defendant received his written cease and desist notice at any time before July 8, 2008. He admittedly has none. The statute is clear that mailing is complete on receipt. There is no evidence of any communications between Mr. Nichols and the Defendant after July 8, 2008.

**15 U.S.C. § 1692c (a)(3) - Improperly Communicating with Debtor at his Place of Employment:** This section prohibits a collector from communicating with the debtor at the debtor's place of employment if the collector "knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication." In his Response, Mr. Nichols contends that Defendant contacted him at work in violation of this section. Yet there is no evidence that 1) Mr. Nichols' employer had a policy prohibiting such calls, or the 2) Defendant knew of any such policy, but called nonetheless.

The Plaintiff's own response to this section of Defendant's motion demonstrates Defendant's point. Mr. Nichols admits that GC's collector detailed in writing in the Account Detail Listing that Plaintiff told GC he did not want us calling him anymore at work and he was afraid he would lose his job if the Defendant continued to call. See Plaintiff's Response, p. 12, lines 9-15. That entry in the Account Detail Listing is

immediately followed by the collector's notation that the telephone number for Mr. Nichols' employer was removed from the file, to ensure that Defendant made no more calls to him there. There is no evidence that Defendant called Mr. Nichols at his place of employment after that note, which was made on June 28, 2008.

**15 U.S.C. § 1692c (b) – Collectors Prohibited from Communicating with Third Parties (except to acquire Location Information):** Mr. Nichols contends that the Defendant had improper communications in violation of this section with his mother, his son, a co-worker, and his former girlfriend. The only evidence he has offered on this count is his own testimony (with regard to his son, his former girlfriend and his co-worker), and his mother's testimony. The Plaintiff's testimony that Defendant improperly communicated with his son, his co-worker, and his ex-girlfriend constitutes classic hearsay as that term is defined by Rule 801, Federal Rules of Civil Procedure, and which is inadmissible pursuant to Rule 802. There are no applicable exceptions to the Rule that would allow Mr. Nichols to testify to what (if any) improper communications Defendant's collector had with these third-parties.

The Plaintiff did produce a witness – his mother -- to testify that she was repeatedly telephoned (15, 20 times) by someone from "GC Financial," and to testify to the improper content of those alleged communications. Nonetheless, the Defendant's Account Detail Listing on Mr. Nichols' account <u>does not show any communication whatsoever with the Plaintiff's mother.</u> Defendant conducted a search into its historical archives to determine how many, if any, telephone calls were placed to Plaintiff's mother's telephone number during the time period in question; that search likewise <u>did not show any telephone calls made to Mrs. Mink's telephone number by any of the Defendant's three call centers that handle Department of Education accounts.</u>

With regard to the record in this case, we have the Defendant's Account Detail Listing, which thoroughly details all collection activity Defendant conducted on

1  Plaintiff's account. It does not show any contacts whatsoever with the Plaintiff's mother,
2  nor any telephone calls placed to her telephone number.  The record also includes the
3  results of research Defendant conducted into its archives to determine if the Plaintiff's
4  mother's telephone number was called by any of the Defendant's pertinent call centers
5  during the time in question.  That search failed to turn up any hits – in other words, none
6  of the three call centers servicing this account telephoned the telephone number in
7  questions.  And we have the Plaintiff's mother, who testified she was called so many
8  times she felt assaulted.
9      Defendant concedes that if a genuine factual dispute exists on any material issue in
10 this case, it is the "he-said she-said" dispute created by Plaintiff's mother's testimony.
11 But the test for summary judgment is not whether there is any evidence, but whether
12 there is sufficient evidence for a reasonable jury to find for the nonmoving party.  *See*
13 *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct 2505 (1986).  "There is no
14 issue for trial unless there is sufficient evidence favoring the nonmoving party.  If the
15 evidence is merely colorable or is not significantly probative, summary judgment may be
16 granted."  *Gostony v. Diem Corporation*, 320 F.Supp.2d 932 (D.Ariz. 2003)(internal
17 citations omitted).  There mere existence of a scintilla of evidence is insufficient; "there
18 must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 935.
19     In order for a jury to find in Plaintiff's favor on this claim, it would necessarily
20 have to find that the Defendant's records are so unreliable that up to twenty calls were
21 place to Plaintiff's mother, with no record made of them whatsoever.  The jury would
22 also have to find, necessarily, that even though the other calls recorded in the Account
23 Detail Listing were found in the research of Defendant's archives, for some reason the
24 twenty or so calls made to Plaintiff's mother did not show up in the search.
25     Presented with the Defendant's collection record, the corroborating results of its
26 telephone number research, and the testimony of Pam Mink, Defendant must concede

23032105v1 891933 46121

that it would be <u>possible</u> for a jury to find for Mr. Nichols, but only if the jury was inflamed or biased against debt collectors, unduly sympathetic to debtors, or suspicious of a grand conspiracy (without evidence of one). Defendant submits, however, that it would <u>not be reasonable</u> for a jury to find in Mr. Nichols' favor on this claims. Even this claim should be dismissed in Defendant's favor.

**Plaintiff's Invasion of Privacy Claim:** Finally, Mr. Nichols has included an invasion of privacy claim in his complaint. Defendant moved for summary judgment, pointing out that the Plaintiff did not even plead the prima facie elements of such a tort, let alone produce any evidence of one. Mr. Nichols apparently concedes this point because his Response does not address this aspect of Defendant's motion.

In conclusion, while it is true that the FDCPA is a strict liability statute, Congress did not relieve consumer-debtors of the burden of proof in passing it. The Court will recall that according to his Interrogatory Answers, Mr. Nichols was unable to even articulate what Defendant did, specifically, in violation of the Act; he needed to see Defendant's collection notes, parts of which he relies on while also claiming they are inherently unreliable.

Plaintiff has failed to produce sufficient evidence of improper threats, improper contact with third-parties, contact after Defendant received a cease and desist notice, or the failure to provide the information required in initial communications with a debtor. Each of the Plaintiff's FDCPA claims against the Defendant should be dismissed, and summary judgment granted, in Defendant's favor.

DATED this 31st day of August, 2009.

/s/ Victoria L. Orze
Victoria L. Orze
Attorneys for Defendant

23032105v1 891933 46121

**CERTIFICATE OF SERVICE**

I certify that on the 31st day of August, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Marshall Meyers, Esq.
mmeyers@attorneysforconsumers.com
Weisberg & Meyers, LLC
5025 North Central, Suite 602
Phoenix, Arizona  85012
Attorneys for Plaintiffs

By    /s/ Victoria Orze

23032105v1  891933  46121