**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bryon Nichols,            ) | No. CV-08-01491-PHX-FJM |
|     Plaintiff,            ) | **ORDER** |
| vs.                       ) | |
| GC Services, LP,          ) | |
|     Defendant.            ) | |

Plaintiff Bryon Nichols brings this action against defendant GC Services claiming violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. The court has before it plaintiff's motion for summary judgment (doc. 68), defendant's response (doc. 80), and plaintiff's reply (doc. 86). We also have before us defendant's cross motion for summary judgment (doc. 70), plaintiff's response (doc. 82), and defendant's reply (doc. 89).

**I.**

In January 2008, defendant began contacting plaintiff on behalf of the Department of Education to collect on a federal student loan in default. Plaintiff claims that defendant failed to send him a written notice after this initial communication as required by § 1692g. Over the next five months, defendant called plaintiff at work a number of times. Plaintiff, a supply store salesman at the time, says that defendant continued to call despite being told to stop

1  because the calls were getting him in trouble with his employer. He claims that these calls
2  violated § 1692c(a)(3) because defendant had reason to know that plaintiff's employer
3  prohibited such communication. During several phone calls, defendant brought up wage
4  garnishment, the offset of federal tax refunds, and litigation. Plaintiff alleges that these
5  actions either could not legally be taken or were not intended to be taken and that he was
6  threatened with them in violation of § 1692e(5). Plaintiff also claims that defendant
7  contravened § 1692c(b)'s restrictions on third-party communications by contacting his
8  coworkers, girlfriend, son, and mother. On June 13, 2008, plaintiff allegedly mailed
9  defendant a notice to stop contacting him. Plaintiff claims that defendant failed to do so, thus
10 violating § 1692c(c). Defendant's phone calls eventually ended in July 2008 after a letter
11 from plaintiff's counsel.

12 Both parties now move for summary judgment on the five FDCPA claims mentioned
13 above. Defendant also moves for summary judgment on plaintiff's additional invasion of
14 privacy claim.

**II.**

16 The FDCPA protects people with consumer debt from "the use of abusive, deceptive,
17 and unfair debt collection practices." 15 U.S.C. § 1692(a).[1] In order to protect "the gullible
18 as well as the shrewd," debt collector behavior is measured against a "least sophisticated
19 debtor" objective standard. Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162,
20 1171 (9th Cir. 2006). The FDCPA is also a strict liability statute. Id. at 1176. Thus, the
21 primary focus in evaluating plaintiff's FDCPA claims is on defendant's conduct, and not on
22 plaintiff's state of mind or defendant's reasons for acting.

23 Plaintiff first claims that defendant failed to send him a debt validation notice. The
24 FDCPA requires debt collectors to send a written notice within five days of initial
25 communication with a consumer containing information about the debt and how to dispute

---

[1] Plaintiff is a "consumer" with a "debt" and defendant is a "debt collector" as defined by the FDCPA. See 15 U.S.C. 1692a.

1  and verify it. 15 U.S.C. § 1692g(a). The notice need only be sent to the consumer. Actual
2  receipt is not required. Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1201
3  (9th Cir. 1999). Defendant contends that the requisite notice was timely mailed on January
4  24, 2008 to plaintiff's address of record, his mother Pamela Mink's house on Harvest Street
5  in Mesa, AZ. Plaintiff concedes that he accepts mail at the Harvest Street address, but he
6  denies receiving the validation notice. Both parties detail defendant's automated mailing
7  process by which letters are requested by collectors around the country and then generated
8  and sent from Houston, TX. However, they dispute the degree to which defendant's account
9  detail listing shows where plaintiff's notice was sent.

10  Plaintiff contends that defendant cannot show where the notice was sent because
11  defendant apparently overrode the account address as of January 2008 with plaintiff's then-
12  current address on Emerald Avenue in June 2008 and then with plaintiff's counsel's address
13  in July 2008. Defendant explains that the account detail listing preserves the former address
14  when it is changed, which is why the Harvest Street address is listed in the notes on June 20,
15  2008, the day the address was changed to Emerald Avenue. See DSOF, Ex. A at 7. We note
16  that the "nearby" addresses in the account detail listing, apparently entered soon after the
17  account was opened in January 2008, are centered on Harvest Street. See id. at 2. Moreover,
18  Mink says that she received a number of letters from "GC Financial Services" addressed to
19  plaintiff at her house in 2008. PSOF, Ex. E at 23-24. There is no genuine issue concerning
20  defendant's compliance with § 1692g. We conclude that defendant sent plaintiff the required
21  notice. Therefore, we grant defendant's motion for summary judgment and deny plaintiff's
22  with respect to plaintiff's § 1692g claim.

23  Plaintiff's second claim is that defendant violated § 1692c(a)(3) by calling him at
24  work after being told to stop because he was getting in trouble for the repeated calls. The
25  FDCPA prohibits debt collectors without prior consent from communicating with consumers
26  in connection with a debt "at the consumer's place of employment if the debt collector knows
27  or has reason to know that the consumer's employer prohibits the consumer from receiving
28  such communication." 15 U.S.C. § 1692c(a)(3). Because the FDCPA protects the

1 unsophisticated, consumers need not use legally precise phrases and it is "enough to put debt
2 collectors on notice under § 1692c(a)(3) when a consumer states in plain English that she
3 cannot speak to the debt collector at work." Horkey v. J.V.D.B. & Assocs., 333 F.3d 769,
4 773 (7th Cir. 2003) (applying "unsophisticated consumer" standard, which varies
5 immaterially, for present purposes, from the Ninth Circuit's "least sophisticated debtor"
6 standard). During the majority of defendant's calls, plaintiff contends that he said, "Please,
7 you're getting me in trouble at my job. Please don't call my job." PSTOF, Ex. C at 22.
8 Defendant's account detail listing contains several entries from April and June 2008
9 suggesting that plaintiff said he was unable to talk while at work. See DSTOF, Ex. A at 6-7.
10 Defendant maintains that there is no evidence that plaintiff's employer prohibited personal
11 phone calls and that it obliged when plaintiff first asked for the calls to stop on June 27,
12 2008. A reasonable trier of fact could resolve this dispute in either party's favor depending
13 on the weight given to plaintiff's testimony and defendant's account detail listing. Therefore,
14 we deny both motions for summary judgment on plaintiff's § 1692c(a)(3) claim.

15 In his third claim, plaintiff alleges that defendant unlawfully threatened him with
16 actions that could not or were not intended to be taken under § 1692e(5). The FDCPA
17 broadly proscribes the use of "any false, deceptive, or misleading representation or means"
18 by debt collectors. 15 U.S.C. § 1692e. "The threat to take any action that cannot legally be
19 taken or that is not intended to be taken," appears in a non-exhaustive list as an example of
20 prohibited conduct. Id. § 1692e(5). Plaintiff contends that he was threatened with wage
21 garnishment, litigation, and the seizure of his federal tax refunds through a Treasury
22 Department offset program even though defendant could not take these actions and had
23 reason to know that the offset action would not be taken. Defendant responds that the
24 creditor, the Department of Education, could take all three actions and that it merely warned
25 plaintiff of the potential consequences of non-payment. While there is little to suggest that
26 defendant implied it could take these actions itself, there is strong evidence that defendant
27 had reason to know a Treasury offset was not intended to be taken. Defendant's
28 representative acknowledges that Treasury offsets generally do not occur for balances as high

1 as plaintiff's and he has never seen the Department of Education take such an action in
2 similar circumstances. PSTOF, Ex. A at 156-59. Thus, the question is whether there is
3 evidence that defendant made a threat.

4 In determining whether a threat has been made, "the conditional nature of a statement,
5 such as the use of the words 'may' or 'possible,' does not negate the existence of a threat if
6 a [communication], in its entirety, could lead the least sophisticated debtor to believe that
7 legal action is a real possibility." Schwarm v. Craighead, 552 F. Supp. 2d 1056, 1077 (E.D.
8 Cal. 2008) (analyzing a letter). Although plaintiff apparently has little recollection of the
9 contents of these calls, defendant's account detail listing suggests that the offset warning was
10 given repeatedly, including in between requests for payment arrangements and immediately
11 after plaintiff was asked if he planned on doing nothing about the debt. See DSTOF, Ex. A
12 at 4-7. A reasonable trier of fact could find that defendant's conduct, taken in context, would
13 give the least sophisticated debtor the impression that a tax refund seizure was a real
14 possibility when, in fact, it was not. However, the evidence in the record does not compel
15 such a conclusion. Therefore, neither party is entitled to judgment as a matter of law on
16 plaintiff's § 1692e(5) claim.

17 Plaintiff, for his fourth claim, alleges that defendant violated § 1692c(b) by contacting
18 his coworkers, girlfriend, son, and mother. Except for the purpose of acquiring location
19 information about a consumer, and several other inapplicable situations, debt collectors may
20 not communicate with third parties in connection with a consumer's debt. 15 U.S.C. §
21 1692c(b). Defendant contends that plaintiff does not have any admissible evidence of
22 contact with plaintiff's coworkers, girlfriend, and son beyond the acquisition of location
23 information. We agree. Plaintiff's account of what these third parties told him about
24 defendant's calls would constitute inadmissible hearsay if offered in evidence to prove
25 improper contact was made. See Fed. R. Evid. 802.

26 Plaintiff's mother, on the other hand, was deposed in this case and says that defendant
27 called her well over a dozen times despite being told not to call. PSTOF, Ex. E at 40. Mink
28 also says defendant implied that she must not care whether plaintiff was taking care of his

- 5 -

1   financial obligations. Id. at 42. Even when communicating for the purpose of acquiring
2   location information, debt collectors may not state that a "consumer owes any debt." 15
3   U.S.C. § 1692b(2). Thus, defendant's purported contact with Mink would contravene
4   § 1692c(b)'s restrictions on third-party communications whether or not the calls were for the
5   purpose of obtaining location information. In response, defendant offers an affidavit from
6   its representative asserting that a search of its call records for its three collection centers
7   handling Department of Education accounts did not reveal any calls made to Mink's phone
8   number in the first half of 2008. Grover Affidavit ¶ 14. It is the trier of fact's role to resolve
9   this factual dispute. We deny defendant's motion for summary judgment on plaintiff's
10  § 1692c(b) claim with respect to Mink and grant it with respect to all other third parties.
11  Plaintiff's motion for summary judgment is denied on this claim in all respects.

12        Plaintiff's fifth FDCPA claim involves a purported certified letter requesting that
13  defendant stop calling plaintiff. Debt collectors must cease communication with a consumer
14  when notified to do so in writing with limited exceptions for certain inapplicable events. 15
15  U.S.C. § 1692c(c). If notice is made by mail, "notification shall be complete upon receipt."
16  Id. Evidence that a letter was properly directed and mailed creates a rebuttable presumption
17  of delivery. See Busquets-Ivars v. Ashcroft, 333 F.3d 1008, 1010 (9th Cir. 2003). Plaintiff
18  says that he generated a notice over his lunch break on June 13, 2008 and sent it to defendant
19  by certified mail, return receipt requested, from a post office. PSTOF, Ex. C at 75-76. In
20  support, plaintiff proffers a letter dated May 13, 2008 and addressed to the Department of
21  Education. Id., Ex. D at 1. This unexplained discrepancy undermines plaintiff's statement
22  that a notice was properly directed to defendant. In addition, plaintiff admits that he did not
23  receive a return receipt. Id., Ex. C at 77. There is no delivery presumption for certified mail
24  when the sender does not receive a requested return receipt. Mulder v. C.I.R., 855 F.2d 208,
25  212 (5th Cir. 1988); cf. Busquets-Ivars, 333 F.3d at 1009-10 (collecting cases to the same
26  effect while expressing no opinion on whether to adopt the rule where letter was otherwise
27  improperly addressed). Defendant also points to the absence of a note about any notice from
28  plaintiff in defendant's account detail listing, where one would appear ordinarily. We

1 conclude that plaintiff has insufficient evidence from which a reasonable trier of fact could
2 find that defendant received a cease communication notice from him. We grant defendant's
3 motion for summary judgment and deny plaintiff's on the § 1692c(c) claim.

### III.

5 Finally, defendant alone moves for summary judgment on plaintiff's claim for
6 "common law invasion of privacy by intrusion." Amended Complaint at 4. Such a claim
7 requires an intrusion that "would be highly offensive to a reasonable person." Hart v. Seven
8 Resorts Inc., 190 Ariz. 272, 279, 947 P.2d 848, 853 (Ct. App. 1997). Plaintiff does not
9 respond to defendant's motion on this claim and we see no evidence in the record to support
10 it. Therefore, we grant defendant's motion for summary judgment on plaintiff's invasion of
11 privacy by intrusion claim.

12 **IT IS THEREFORE ORDERED DENYING** plaintiff's motion of summary
13 judgment (doc. 68).

14 **IT IS FURTHER ORDERED GRANTING IN PART** and **DENYING IN PART**
15 defendant's motion for summary judgment (doc. 70). It is granted on plaintiff's claims under
16 § 1692g, § 1692c(b) except with respect to Pamela Mink, § 1692c(c), and his claim for
17 invasion of privacy. It is denied as to the remaining claims.

18 The clerk is instructed to change plaintiff's first name to "Bryon" from "Bryan."

19 DATED this 27th day of October, 2009.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge